Case No. 16-4004, Local 1982, International Longshoremen's Association v. Midwest Terminals of Toledo, et al. Oral argument not to exceed 15 minutes per side. Mr. Ronald Mason for the account, you may proceed. Thank you. May it please the Court, I'd like to reserve three minutes for my rebuttal. My name is Ronald Mason, I represent Midwest Terminals in this particular case. This standard of review in this case is de novo, so this Court gets a fresh look at the facts and the documents in this case for its own ruling. There's some important facts that I think that it's really important that this Court understand. This is a grievance over some current collective bargaining language in its collective bargaining agreement for health insurance, where the provisions in that contract between my client and Local 1982 provides that the health insurance plan, that the accrual method that's used for credits, is an unfunded liability that the company has. And the language is specifically set forth in Section 18 of the collective bargaining agreement, which says that the fund is intended to constitute an unfunded obligation of the company. And that is in the collective bargaining agreement. And in this particular case, what we have is, is that the company has always paid all the health insurance. I think you're addressing what was really the merits of the dispute for the arbitration panel, rather than addressing any issue that is before us. And your time might be better directed toward the issues that are before us, rather than trying to convince us your client has somehow been wronged by the merits of the decision. If I may, what we have is where this Court remanded the case back to the Court on the grievance committee. And the grievance committee's instructions and orders with respect to its decision was, is that the parties are to negotiate a RISA plan that meets the minimum benefits required, the minimum standards. The issue before us is not who performed reasonably in that effort to resolve, either, is it? Well, yes, it is, actually, because what we have is, is that the parties were ordered to negotiate. The Court determined, after the parties under the Court's supervision were unable to reach an agreement, that the Court decided that it would remand to the grievance committee. I mean, your inability to reach an agreement provided the occasion for the district court to become involved in the dispute at that point. But whether you were reasonable in your failure to reach an agreement wasn't an issue, is not an issue for us. No, it's an issue for the National Labor Relations Board. The National Labor Relations Board governs the conduct of the parties. We look like the National Labor Relations Board. No, that is our point. We do. That is, you all are, fortunately, you all are familiar with the NLRB by what this Court does. The NLRB governs the rules and regulations over negotiations. We, on remand, per the judge's instructions, negotiated with the union with respect to trying to develop an ERISA plan. We actually came to an agreement on almost all the terms but two. One was, is that the union wanted binding arbitration for the change of benefits, which is a permissive subject of bargaining under the National Labor Relations Act, and the union wanted to change the contract language from unfunded to funded, and we refused to agree to that. So we wound up in dealing with the court in trying to reach this agreement, an inability to reach an agreement on those terms. The bad news is the ruling from the arbitration board said our ruling is that a procedure be moved forward. Vague, isn't it? What is a procedure move forward? Everybody at the beginning of this, when we were before the judge, understood that we were to negotiate a new agreement, and the judge instructed us. One nice word that could have been put in there, isn't it? Negotiate. But that's what you did. Exactly. That's how we all interpreted that and negotiated it. And you failed to reach an agreement. You say almost did. Two points hung up the process. Right. What did the arbitration award do? I mean, you had an obligation to negotiate before it went to arbitration, and then you went through arbitration, and the arbitration award is upheld. Our court orders the district court to enter an order directing the arbitration enforcement award. What was the arbitration about if you were negotiating before the arbitration? And you say that all you're doing after the arbitration is negotiating again.  I mean, we're talking about NLRB. I mean, weren't you required to negotiate before this arbitration? If the union had made proposals with respect to an ERISA plan and where the parties had agreed to one, then yes, that's a term and condition of employment. But the bottom line was is that we had no ERISA plan for the health insurance. But you should have. But you should have negotiated. No. I think you were in violation of the law. That was what the arbitration said is that we need to negotiate one, and that's exactly what we did. I don't think there was any dispute that you had an obligation to negotiate. I mean, if the arbitration award means anything, it means something other than continuing negotiations, I think. Well, we didn't have an ERISA fund. I don't see. I'm sorry. I've got to repeat it again because you don't seem to have gotten the point. I do not see what you had to do, what you did in negotiation, has to do with whether the language of this arbitration award, as referred to by Judge Cook, is or is not ambiguous. Your conduct is not what's being evaluated here. The language of the arbitration award is what's being evaluated. That, I guess, is where we have a disagreement is that to us, we read it as saying under this provision that we are to go forward with a procedure to get an ERISA benefit plan. The only way the national. . . Let's agree on one thing. Yes. You read it that way, and your opponent reads it another. The reason we're here today is because the district court said a pox on all your houses. Go back and resolve it through the arbitration through the board instead of who told you this initially. Let them sort out that vague language. That's the way I see it, counsel, so where am I wrong? The wrongness in the concept is that there is nothing in the master contract that requires any particular defined provisions in an ERISA benefit plan for health insurance. Nothing. The master contract. That sounds like an argument you would put to the panel who will hear this on remand. This sounds precisely what you want to tell them. Argue your point. Like Judge Gibbons, I'm thinking our only job here is to decide what was wrong with the district court saying, you two disagree about what that award means. Leave me out of it and go back to where it came from. I'm in agreement with all that as a concept, except that instead of going back where you came from, go to the NLRB because they are the ones that govern. I gather that your argument is that your apparent violation, the one that a procedure is supposed to be moved forward to correct, requires only that you talk about the issue some more. That we negotiate. And that is what is required between a union and a company whenever you Why would a ruling, an arbitration award, whatever it means, mean that the party who has committed an apparent violation, that nothing else needs to happen and all that needs to happen is that that party continue to talk about it? How would that be ever effective in remedying an apparent violation? So, I mean, not only does it not make the arbitrator's ruling any clearer, that seems to me like the least likely possible interpretation of the arbitrator's ruling. So, I mean, how does that make... It doesn't seem to me that your argument gets you much of anywhere. Here's the problem we have, Your Honor, and I'm not... May I interrupt just for a moment? Because I think you were finishing telling me. Were you distinguishing between the NLRB... Well, I'm not positive, Judge Gibbons, but it sounded to me like you were trying to say it's the wrong entity. NLRB as opposed to who? As opposed to the Grievance Committee because the Grievance Committee cannot... Is the Grievance Committee within the company? Who's the Grievance Committee? The Grievance Committee is part of the master contract that we terminated back in 2012. The Grievance Committee is made up of management and labor. The specific individuals were on each committee. Okay, these are the same folks, I think exactly what Judge Gibbons is saying, the same people who've been at it interminably here, and nobody will take no for an answer, but you say now let's go to the NLRB. How do you get there? Did the district court tell you to go there? No. You argue that you should go there in your brief? Yes, we argued it to the judge that we... Where is this in your appellate brief? It's all throughout the brief. We've argued that this was before the NLRB, that the issues that the union was seeking... NLRB as opposed to, I need the other side of that. What's the other side of the V there? The other side of the V is the Grievance Committee. I don't even, I'm not clear about that because I've always thought there was, that you went to arbitration through the... No. It's NLRB panel who worked it before, right? No. All right. I'm sorry. Make the players clear. This was originally a grievance that was filed by the union and under a master contract agreement. Internal. Internal. And this was the second step of the grievance procedure, and that was the ruling in the second step of the grievance procedure by two individuals who ruled and gave this decision about go back and negotiate a RISA plan. The union did not even appear for that as I... No, the company did not. The company didn't. All right. Yes. I wasn't representing them then. Yeah, yeah. But we went back and everybody before the judge interpreted that language that we negotiate, and the judge did a very good job of helping us. Take us back to the NLRB question. Okay. Is it a different entity that you should have been sent to, and that's why you're appealing what the district court did? Yes. What entity? NLRB is what? That's a big organization. Basically, there's no question that a health plan is a term and condition of employment. There's no question that as a health plan, the NLRB has said that you cannot make changes to that term and condition of employment without negotiating in good faith. So if, in fact, the parties are unable to reach an agreement, our position with the court was that this now moves from the grievance committee to the union can file a charge against the company, the company can go to an impasse into the negotiations. The consideration of this issue comes about only if what you did is characterized as simply a failure to negotiate, and only if we accept your interpretation of the arbitration award. I mean, there would be no occasion for your adversary to ever go to the NLRB unless it had been unable to obtain proper relief through the arbitration process. And you really don't make that argument per se. You make it. I found the reference. It's on page 12 of your brief. It goes on to page 13. But the only way that comes into this is your argument that you're done, you've negotiated, case closed, there's no ambiguity in the arbitration award, and tough luck to your adversary on to the NLRB. That's it. Am I getting that? No, ma'am. The National Labor Relations Board has all kinds of remedies that they can issue. What about that is if you're not telling them to go to the NLRB, if you're telling them that, then you must have done everything that you were supposed to do under the arbitration award, and there must be no ambiguity. And that's how we come to the circuitous path of talking about the NLRB today. Your Honor, if you think of it from this standpoint, the judge and the parties looked at exactly the same language, and we all negotiated a ERISA plan for health insurance per the court's order to remand and per the decision. What happened was is that we didn't reach a final agreement over two items. The court then on that point could have easily said, okay, this is something where the time is up. I'm sorry. I was so caught up in the point. I was trying to get you to concede. I didn't pay any attention. You can sit down now. You'll have your rebuttal time. Mr. Faulkner. Good morning, Your Honors. May it please the Court, my name is George Faulkner. I represent the International Longshoremen's Association, local 1982. You're absolutely right, Judge, in your questioning the arbitration decision and whether it was ambiguous or not. The crux of that decision states, our ruling is that a procedure be moved forward to correct Midwest's apparent violation of 5A of the master agreement. By way of background, the master agreement is the controlling document here for resolution disputes. This issue is not proper before the National Labor Relations Board. The parties in 2011 bargained for the collective bargaining agreement. Who is it properly before? It's properly before this court in terms of the appeal that was rendered. The appeal, what is the relief that you seek? The relief we seek is an affirmation of the district court's finding and quite proper finding that the language in the remedy portion of the arbitration award is ambiguous and therefore should be returned to the arbitrator panel for clarification because the parties have two different views of what that means. The nuance to that, of course, is that there cannot be reconstituted the same group. What do you say about that? Somebody retired or somebody's gone. You can't get the original panel. You look confused. Am I making that up? No, Your Honor, I'm not confused. The parties bargained for the benefit of a panel. However it's constituted, one member from the union, the Great Lakes District Council, and one member from the Great Lakes Stevedore Employers. There was an argument posed about so-and-so won't be there anymore. Correct. One of the employer members or the employer member terminated his employment, was no longer employed by the Stevedore employer, and there's been another member appointed. However, the author of this document, of the arbitration award, is still on that committee. The concept is that it's the panel as an entity as opposed to the panel. I mean, our court doesn't go out of business for rulings because somebody retires or resigns or whatever. And that was my point to Judge Cook, Your Honor. I wanted you to make the point. That it's to the entity as opposed to individuals. And this panel, in terms of this committee, is also governing over grievances by other employers under the master agreement as well. So not only is Midwest Terminals affected by this agreement, but other employers as well as other unions, not only local 1982. And the committee can draw on the experience as a committee with those other employers and other unions to clarify the award that I should admit here was inartfully drafted and could have been much more clear in terms of the remedy. As Judge Helmick found when the parties presented their respective versions of what it meant. And if this goes, if it is remanded and it goes back to that committee, I'm sure Midwest as well as the union will argue their respective positions of what it means. And perhaps the committee decides that Midwest is correct in their interpretation. Or that the union is correct. It will be back here. Well, in that event, however, if the clarification doesn't draw its essence from the contract, as federal labor law requires, then they may file to vacate again. But we're back here again after two years basically relitigating the case. And it reminds me that as of this point, since 2012, this arbitration decision has been unfulfilled. And the purpose of federal labor law policy is to foster arbitration, to resolve disputes, not to continue disputes as we have before us. It's like Groundhog Day here. I should add to your honors that the district court, through its gallant work, has arranged that actually the hearing before the committee on the interpretation, or should I say on the clarification, has been rescheduled and will be held absent a stay, which I understand is pending with this court, will be held on May 31st. So the parties did come to an agreement that they will go before the committee again for a clarification, as ordered by Judge Helmick. And that has now been scheduled. In terms of the remand to the entity, the contract, the master agreement, how does it refer to, is the entirety of the arbitration procedure set forth in the master agreement, or is there some reference, you know, some contracts refer to the Federal Arbitration Act or something like that? I mean, is there language in the master agreement that we would find that suggests we're talking about entity rather than individuals? Well, in the section, the arbitration provision of the master agreement does refer to the joint committee and doesn't refer to individuals. It refers to the committee, not to individuals. Correct. And that joint committee is appointed by the respective organizations that are the umbrella organizations, the Great Lakes District Council, not by the local union, and by the Great Lakes Stevedore Employers Association. Mr. Mason is correct that the procedure that was alluded to, followed by the local union, was to file the grievance. When the grievance was denied by the company, they proceeded to step two. Step two is the grievance committee decision. There is a final step that if the grievance committee were to deadlock, then it would go to a neutral third-party arbitrator, and there's a procedure set forth in the master agreement. In this case, however, in 2012, the committee did not deadlock. The committee was unanimous in finding that there was a violation of Section 5A of the agreement, which I might add specifies that the agreement specifies that they provide a local union and employer ERISA-approved benefit, pension, and welfare plan. I find the arbitration provisions now in the master agreement, they're set out in Section 25, right? Yes. And that's the entirety of it? That's correct. So our interpretation of the reference in 5A of the master agreement is that it would be a local union and employer ERISA-approved benefit plan. Council has a different interpretation of that. Our interpretation, quite normally, is a jointly trustee Taft-Hartley plan under Labor Management Relations Act Section 302. In clarification, the committee may decide otherwise that that's not the case. Perhaps what was envisioned by the company as compliance with Section 5A of the agreement is a different vehicle to provide benefits to the members. But that is our position. That's what we would argue before the committee if it is remanded for clarification. And it would be up to the committee then to decide as an entity to provide clarification not only to us, but also to the district court. At that point, I don't think I have anything else to add, but let me mention. It was interesting that when this court issued its decision in 2014, to me, when I read it, that Judge Boggs began the decision by stating that the danger in telling a federal court that a case is really quite simple is that sometimes the case may turn out to be simply in favor of the other party or simple in favor of your opponent. We believe this case is simple. The issue is whether the district court erred in not being able to determine the interpretation or the meaning of the arbitration award from the record and finding that because two plausible interpretations were possible and were susceptible, that he remanded it and he had the authority under, as we all know, Sixth Circuit law to remand it for clarification. That's all we're seeking. We're not seeking to renegotiate this agreement, as Mr. Mason would suggest, and failing to negotiate, we would trot off to the NLRB. That agreement was negotiated. The parties agreed to take any dispute to this panel under Section 25 of the Master Agreement. The dispute is the meaning of 5A of the Master Agreement. We received a decision to that effect by the committee. We are seeking now clarification of that decision because, as I indicated before, unfortunately the remedy portion of that agreement or that decision was inartfully drafted, and we just need some help there in that regard. With that, I will stand for any questions from the court. Thank you. Thank you. Thank you. There's a couple of very important points with respect to the remand issue. The Sixth Circuit's court rulings are very, very specific, and I will cite to you page 19 of the union's brief with respect that the general rule under the doctrine is that when a matter is remanded, it is remanded to the original arbitrator. There's a ton of Sixth Circuit cases saying that when you remand for an interpretation, a clarification of a decision, it has to go back to the original panel, and it cannot be done. You're asking in this situation the facts that came out after the judge issued his decision. We learned only in January or February of this year that one of the two members of the panel is no longer there. So this court now cannot or the court cannot remand back to the original panel. So now you have to have a new person who's going to now try to interpret, and he represents 50% of the decision making, that he's going to interpret what that decision now means. And how is he any different than this court when your honor says this looks like a confusing term, what did they mean? Well, now we only have one of two people who does not represent a majority to decide what that language is supposed to mean. And that then becomes where we wind up with a whole new set of case issues about whether or not it is possible in this situation to have a remand to someone who doesn't even, wasn't participating in the decision. chosen as the substitute will come bearing the same level of experience that makes that entity worthy in your negotiation. You negotiated that it goes to this group, is it called a panel? This committee is made up of people with experience, right? And this next person ought to be as experienced even though he won't intuit what his predecessor had in mind. Maybe that doesn't matter. Why does it? Well, because the Sixth Circuit's language, I mean, there are a bunch of cases that I would be happy to submit to you in a supplemental because this happened after the court issued its decision. It's not a part of the record here, but it's an actual consequence of what's going to happen. Is that the Sixth Circuit has repeatedly in case after case after case said that it has to go to the original panel. And there is an actual case where the Sixth Circuit, if you look at the decision that the judge cited. The Sixth Circuit could bring somebody back from the dead kind of thing. Your Honor, basically what happens in these situations is that if an arbitration decision is, for want of a better term, not clear and it's remanded and or it's ambiguous, they are not enforceable decisions because they are ambiguous. Well, I'll be happy to submit a supplemental on the issue if you'd like. Thank you both for your argument. We'll consider the case carefully. And we do have a motion to stay pending.